RECEIVED

OCT 0 4 2023
MUB
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CLINTON BRINSON,
        Plaintiff,

v.

C/A NO. 5:23- CV-00547- D

BROSNAN RISK CONSULTANTS,
        Defendant,

To
C T Corporation System
28 Liberty Street
NY, NY 10005

I am filing this Complaint against Brosnan Risk Consultants for violating my rights Under Title VII of the Civil Rights of 1964 which prohibits employers from retaliating against an employee who has filed a charge with the EEOC and for violating my rights under the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12101-12213 to provide a reasonable accommodation for my sciatica disability that was eventually diagnose as a severe spinal stenosis disability.

1. Retaliation. On around and about mid-April 2022 I was hired as a security officer for Brosnan Risk Consultants who contracts with retail outlets such as Walmart to provide security. Around and about May or June 2022 while I was working as a security officer at the Durham Walmart store my sitelead Imani Taborn began trying to bully me about how the security was going to be run at the store. On one occasion a Walmart associate told me that she had seen Imani Taborn drive the Brosnan truck use for patrolling the outside store parking lot the wrong way when driving the truck around the back of the store to patrol that area and when she came out on the other side she would be in a blind spot for traffic. I immediately called Imani Taborn on the company phone and informed her about the way she was going around the store would bring her to a blind spot on the

Case 5:23-cv-00547-BO-BM     Document 1     Filed 10/04/23     Page 1 of 15

2.

other side and that it was told to me by our Field Supervisor Chaz White not to drive the truck that way because you will be in a blind spot on the other side. Imani Taborn got mad and came at me in an ugly tone that I did not check her on how and where to drive the truck she was my supervisor I did not check her. On another occasion a young lady had come into the Durham Walmart store and told me that Imani Taborn had almost hit her child with the company truck and that Imani Taborn had got ugly with her about it the young lady wanted Imani Taborn's name and to talk to Imani Taborn and my supervisor. I gave the names to the young lady and called Imani Taborn and my immediate Supervisor Chaz White and told him what the young lady had told me. Imani Taborn immediately called me on the company phone and came at me in an ugly tone that I don't be reporting on her or giving people her name. On yet another occasion Imani Taborn was late for work and as Brosnan Risk Consultants' and Walmart's policies instructed at the time, I began patrolling the store and then would begin the truck patrolling of the parking lot. When Imani Taborn got to work she called me on the company phone and asked me did I have the truck key. I told her yes because I was going to begin the truck patrolling of the parking lot if no other officer came in. Imani Taborn got mad and yet again started talking to me in an ugly tone that my job was the truck patrol not the store patrolling and I needed to worry about my job not someone else's that I could go to the truck or bring her the truck key right now! I called Chaz White and told him about Imani Taborn's tone and bullying Chaz White said "We need somebody to talk to you officers like that". I immediately called Khalic the Field Supervisor that actually called me back to be hired at Brosnan Risk Consultants around and about mid-April 2022 and told him about Imani Taborn's bullying and what Chaz White had said. Khalic said he would look into it. After my complaint to Khalic a plethora of retaliation began against me. Chaz White had Imani Taborn begin timing my bathroom breaks timing how long it took me to start the truck patrol, and timing me on how long it took me to clock in once I got to the store. No one else was subjected to this scrutiny. Then on two occasions Chaz White and Imani Taborn had other managers listen in on my phone calls with them without my knowledge to try and trick me into saying something and be taken off the clock or be terminated. On both occasions I was taken off the clock. The retaliation was so bad I ask Khalic did he want me to quit. District Manager Jim Myers said Brosnan did not allow employees phone calls to be listen in on without the other person's knowing and that he would take care of it, however no discipline had come to Chaz White or Imani Taborn. In a four-way

3.

phone conversation with District Manager Jim Myers, Khalic, Chaz White, and myself I told them I was taking the matter of Imani Taborn and Chaz White bullying and harassment to the EEOC. After my complaint to Jim Myers, Khalic, and Chaz White that I was taking the matter of Imani Taborn and Chaz White bullying and harassment to the EEOC my situation deteriorated worse. I was moved from the Durham Walmart store to the Raleigh Walmart store on New Bern Avenue where my hours were reduced from 8am to 4pm 8 hours a day at the Durham Walmart Store to 12pm to 6pm 6 hours a day at the Raleigh Walmart store. Although District Manager Jim Myers had told Chaz White to set my hours at the Raleigh Walmart store on New Bern Ave to 40 hours a week and not into the weekends like I was doing at the Durham Walmart store Chaz White did not do it. I had to call Khalic two weeks in a row about it. Chaz White came to the Raleigh Walmart store and told another Brosnan security officer and Walmart associates all of my business in this matter then threatened me creating a hostile work environment. (I have a phone recorded conversation of Chaz White and I Chaz White threatening me because I wouldn't go along with his view of the bullying and harassment by Imani Taborn and him). Chaz White then tried to write me up because someone had pushed one of the Walmart doors off its ridges and I didn't report it even though Chaz White knew I hadn't seen the door off its tracks, but Khalic didn't allow the write up. I was then moved to the Wilson Walmart store where I was demoted from my position as sitelead I had at the Raleigh Walmart store because there was no sitelead position at the Wilson Walmart store and my pay was reduced from $17 an hour sitelead pay to $15 an hour regular security officer pay. Also, there was no alternating the walking patrolling of the store and truck patrolling of the parking lot. I had to walk patrol the store for 10 hours a day four straight days over double the walk patrolling of the Durham and Raleigh Walmart stores where there was a truck to alternate walking the store patrol and driving the truck for vehicle parking lot patrol. I began feeling pain in my left foot, and my back from so much added walking workload I had to do at the Wilson Walmart store and the pain became unbearable to do a walking patrol for 10 hours a day. My doctor gave me restrictions that would mean me being off of my feet intermittently during my shift which was not possible at the Wilson Walmart store. I asked for accommodations to be moved back to the Durham or Raleigh Walmart stores where there was a truck for alternating the walking patrol of the store and vehicle

4.

patrol of the store parking lot. Moreover, in an EEOC investigation of this matter Brosnan Risk Consultants said in a position statement concerning this matter that the reason they moved me from the Raleigh Walmart store to the Wilson Walmart store is because I was a flex officer. However, I have a phone recorded conversation with Chaz White and I discussing that I was no longer a flex officer when I was at the Raleigh store and moved to the Wilson Store. And I have a phone recorded conversation with District Manager Jim Myers and I discussing that I was no longer a flex Officer when I was moved from the Raleigh Walmart store to the Wilson Store. See attached copy of Position Statement by Brosnan to EEOC Marie Myatt last page second paragraph. The phone recorded conversations clearly prove that I was not a flex officer at the time I was moved from the Raleigh Walmart store to the Wilson Walmart store and that Brosnan lies to the EEOC in this matter and it can only be to cover up for the real reason Brosnan moved me from the Raleigh Walmart store to the Wilson Walmart store retaliation against me for telling Jim Myers, Khalic, and Chaz White I was taking the matter of Chaz White and Imani Taborn bullying and harassment of me to the EEOC. The simple truth is Defendant violated my rights under Title VII of the Civil Rights Act of 1964 for making my complaint to them that I was taking the matter of Chaz White and Imani Taborn bullying and harassment of me to the EEOC. See case law Burlington Northern & Santa Fe Railway Co. v White 548 U.S. 53, 2006, White filed suit in federal court where a jury rejected her claims of sex discrimination but awarded her damages of $43,000 after finding that she had been retaliated against for complaints in violation of Title VII of the Civil Rights Act of 1964. The Supreme Court unanimously agreed that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay. Though the duties were within the same classification and the pay was eventually reinstated, the action was nevertheless sufficiently harsh to constitute retaliatory discrimination. Also see case law Williams v, Prince Cnty UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT April 14, 2016 645 F. App'x 243 (4th Cir. 2016) Carol Williams brought this action against her employer, Prince William County, Virginia, alleging she was sexually harassed and discriminated and retaliated against, in violation of Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C. Sections 2000e to 2000e-17 (2012). Challenging only the district court's dismissal of her retaliation claim Williams asserts that the district court erred when it determined she failed to state an adverse employment action because the court applied the wrong standard for assessing

5.

adverse employment action in the context of a retaliation claim. Williams' allegations about the unfavorable circumstances she experienced after she filed her EEO complaint that she was denied a deserved pay increase, had her office and equipment taken away or limited, and was excluded from meetings and given unattainable goals in her performance evaluation. It is at least plausible that such actions would have dissuaded a reasonable employee from making or supporting a charge of discrimination. See Burlington N., 548 U.S. at 68. In my case, the circumstances are the same, on around and about June 2022 I engaged in a protected activity reporting to District Manager Jim Myers, Field Supervisor Khalic, and Field Supervisor Chaz White my intention of registering a complaint with the US Equal Employment Opportunity Commission about Chaz White and Imani Taborn bullying and harassing me. After I reported to District Manager Jim Myers, Field Supervisor Khalic, and Field Supervisor Chaz White that I was taking the bullying and harassment of Chaz White and Imani to the EEOC my situation deteriorated worse. I was moved from the Durham Walmart store to the Raleigh Walmart store on New Bern Avenue where my hours were reduced from 8am to 4pm 8 hours a day at the Durham store to 12pm to 6pm 6 hours a day at the Raleigh Walmart store. Although District Manager Jim Myers had told Chaz White to set my hours at the Raleigh Walmart store on New Bern Ave to 40 hours a week and not into the weekends like I was doing at the Durham Walmart store Chaz White did not do it. I had to call Khalic two weeks in a row about it. Chaz White came to the Raleigh Walmart store and told another Brosnan security officer and Walmart associates all of my business in this matter then threatened me creating a hostile work environment. Chaz White then tried to write me up because someone had pushed one of the Walmart doors off its ridges and I did not report it even though Chaz White knew I hadn't seen the door off its tracks, but Khalic didn't allow the write up. I was then moved to the Wilson Walmart store where I was demoted from my position as sitelead I had at the Raleigh Walmart store because there was no sitelead position at the Wilson Walmart store and my pay was reduced from $17 an hour sitelead pay to $15 an hour regular security officer pay. Also, there was no alternating the walking patrolling of the store and the truck patrolling of the parking lot. I had to walk patrol the store for 10 hours a day four straight days over double the walk patrolling of the Durham and Raleigh Walmart stores where there was a truck to alternate walking the store patrol and driving the truck for vehicle parking lot patrol. I began feeling pain in my left foot, and my back from so much added walking workload I had to

6.

do at the Wilson Walmart store and the pain became unbearable to do a walking patrol for 10 hours a day. My doctor gave me restrictions that would mean me being off of my feet intermittently during my shift which was not possible at the Wilson Walmart store. I asked for accommodations to be moved back to the Durham or Raleigh Walmart stores where there was a truck for alternating the walking patrol of the store and vehicle patrol of the store parking lot. The evidence therefore establishes adverse employment actions was taken against me that might well dissuade a reasonable worker from making or supporting a charge of discrimination. Also, the adverse employment actions were taken against me in June and July of 2022 soon after I had reported to District Manager Jim Myers, Field Supervisor Khalic, and Field Supervisor Chaz White that I was taking the bullying and harassment of Imani Taborn and Chaz White to the EEOC, there was a causal connection between my protected activity and the Defendant's adverse employment actions against me. Moreover, in an EEOC investigation of this matter Brosnan Risk Consultants said in a position statement concerning this matter that the reason they moved me from the Raleigh Walmart store to the Wilson Walmart store is because I was a flex officer. However, I have a phone recorded conversation with Chaz White and I discussing that I was no longer a flex officer when I was at the Raleigh store and moved to the Wilson store. And I have a phone recorded conversation with District Manager Jim Myers and I discussing that I was no longer a flex officer when I was moved from the Raleigh Walmart store to the Wilson store. See attached copy of Position Statement by Brosnan to EEOC Marie Myatt last page second paragraph. The phone recorded conversations clearly prove that I was not a flex officer at the time I was moved from the Raleigh Walmart store to the Wilson Walmart store and that Brosnan lies to the EEOC in this matter and it can only be to cover up for the real reason Brosnan moved me from the Raleigh Walmart store to the Wilson Walmart store retaliation against me for telling Jim Myers, Khalic, and Chaz White I was taking the matter of Chaz White and Imani Taborn bullying and harassment of me to the EEOC, more proof that there is a casual connection between my protected activity and the Defendant's adverse employment action against me. Based on the evidence, there is reasonable cause to believe Defendant violated my rights under Title VII of the Civil Rights Act of 1964 retaliatory provision retaliating against me for making my complaint to them that I was going to the EEOC about Chaz White and Imani Taborn bullying and harassment of me.

7.

2. Americans with Disabilities Act. On around and about July and mid-August 2022 while I was working as a security officer for Brosnan Risk Consultants doing the prolonged walking and standing the walking patrol the job required at the Wilson Walmart location I began to feel a pain in the bottom of my left foot. At first I thought the pain was because of the 10 hours a day four days in a row Monday thru Thursday and I wasn't use to standing and walking that long but eventually as I continued to work the pain radiated from the bottom of my left foot, thru my left leg, thru my left buttocks and into my back. During this time I had contacted my immediate supervisor Field Supervisor Khalic a number of times that my foot was in a lot of pain standing and walking for such a long period of time working at the Wilson Walmart store and requested to be moved from this location to another Walmart store location where that store had a vehicle patrol of the store parking lot to alternate with the walking patrol of the store and there wasn't nearly as much standing and walking. Field Supervisor Khalic never moved me and on October 17, 2022 the pain had gotten so bad, so sharp that I felt like I was crippled and I told the Walmart head of security AP Jack and my Operational Manager Dom that I was not going to be at work the next day I was going to the hospital emergency room to see what the pain was all about. The next day October 18, 2022 the emergency room Doctor diagnose me with sciatica pain affecting the back, hip, and outer side of the leg, caused by compression of a spinal neve root in the lower back, often owing to degeneration of an intervertebral. I immediately contacted my Operational Manager Dom and began the workman's compensation process. Doing this time Dom left the job and my Field Supervisor Khalic, District Manager Jim Myers, Human Resources Mairelys, and Brosnan Risk Consultants workman's compensation insurance company Everest Premier became the ones I was dealing with insofar as what information, and medical records was needed for the workman's compensation process and any accommodations Brosnan Risk Consultants can give me to be able to continue to work the job as a result of the sciatica disability. See attached copy email to Human Resources Mairelys of medical record and Doctor's note 10 18 2022. Also see attached email to Human Resources Mairelys of medical record, text, and Doctor's note 11 08 2022. Also see attached email from Mairelys to Clinton Brinson. These attachments all prove that I had given documentation of a disability of sciatica that was severe enough to interfere with my ability to work and needed to be accommodated for at my job as a security officer with Brosnan

8.

Risk Consultants. I was out of work October 18, 2022 because of the sciatica disability affecting my lower back legs and feet and during this time I was asking my Field Supervisor Khalic for the accommodation of being able to go back to the Durham or Raleigh Walmart locations where there was a vehicle patrol of the stores' parking lots to alternate with the walking patrol of the stores and I would not have to do nearly half the prolonged standing and walking I was doing at the Wilson Walmart location. Khalic still would not give me the accommodation claiming that I could still do the standing and walking at the Wilson store and there was no positions available for me at any other Walmart locations that had a vehicle patrol of the parking lot to alternate with the walking patrol of the store, however another Brosnan Officer Egypt Colon working at the Raleigh Walmart store location on Fayetteville road which had a vehicle patrol of the store's parking lot to alternate with the walking patrol of the store told me that Brosnan needed officers at that Walmart. It wasn't until around and about November 9, 2022 when the emergency Doctor did a second diagnosis that my sciatica disability was more serious and I would have to see a back and spine specialist that Khalic finally moved me to the Raliegh Walmart store location on Fayetteville Road and New Bern Avenue where there was a vehicle patrol of the stores' parking lots to alternate with the walking patrol of the stores and I would not have to do prolonged standing and walking nearly half the time I was doing at the Wilson Walmart store the accommodation that would allow me to continue to work my job as a security officer with Brosnan Risk Consultants. See attached copy of email from Human Resources Mairelys to Clinton Brinson. Clearly my sciatica disability diagnosis was too bad for me to be able to continue working at the Wilson Walmart location where there was only a prolonged standing and walking patrol, however, Field Supervisor Khalic, District Manager Jim Myers, and Human Resources Mairelys kept me out of work even though there was a position for me at the Raliegh Walmart location on Fayetteville road with a vehicle patrol of the stores' parking lot to alternate with the walking patrol of the store even though the medical documentation showed I absolutely could not work at the Wilson Walmart location because of my sciatica disability in violation of my rights under the Americans with Disabilities Act of 1990 42 U.S.C. Sections 12101-12213. See Fourth Circuit Court of Appeals case law Christina Lynn Jacobs versus N.C. Administrative Office of the courts; Jan Kennedy, in her official capacity as New Hanover County Clerk of Superior Court and Brenda Tucker, New Hanover County Clerk of Superior Court; Melissa Griffin; Debra Excell March 12, 2015 Christina

9.

Jacobs worked as a deputy clerk at a courthouse in New Hanover County, North Carolina. Although she allegedly suffered from social anxiety disorder, her employer assigned her to provide customer service at the courthouse front counter. Believing that her mental illness hindered her ability to perform this inherently social task, Jacobs requested an accommodation—to be assigned to a role with less direct interpersonal interaction. Her employer waited three weeks without acting on her request and then terminated her. Jacobs brought suit against her employer under the Americans with Disabilities Act (ADA) failure to provide a reasonable accommodation. To establish a prima facie case for failure to accommodate, Jacobs must show: "(1) that she was an individual who had a disability within the meaning of the statue; (2) that the employer had notice of {her} disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." Jacobs alleges that her social anxiety disorder substantially limited her ability to interact with others and was therefore a disability. After examining Jacobs, forensic psychologist Dr. Claudia Coleman concluded that "her mental disorders, Social Phobia and Anxiety Disorder, . . . constitute a disability as defined by the [ADA]. Jacobs's social anxiety disorder substantially limit any major life activities because "interacting with others" is a major life activity. The EEOC's interpretation of the ADA See 29 C.F.R. Section 1630.2(i)(1)(i) (identifying "interacting with others" as a major life activity) . . . According to the APA, a person with social anxiety disorder will either avoid social situations or "endure to social or performance situation . . . with intense anxiety." Thus, the fact that Jacobs may have endured social situations does not per se preclude a finding that she had social anxiety disorder. Rather, Jacobs need only show she endured these situations "with intense anxiety." Id. At a minimum, Jacobs's testimony that working the front counter caused her extreme stress and panic attacks creates a disputed issue of fact on this issue. Her testimony is also consistent with Dr. Coleman's testimony that Jacobs suffered from social anxiety disorder within the meaning of the DSM-IV, Jacobs has shown that she was an individual who had a disability within the meaning of the statue. Jacobs e-mailed her request for an accommodation to Tucker on September 9, 2009. Jacobs also e-mailed her request to her immediate supervisors, and discussed her request in person with Kennedy. Kennedy told Jacobs that she could not act on Jacobs's request without discussing it first with Tucker. Upon returning to the office September 29, Tucker held a meeting with Jacobs's immediate supervisors—

10.

Kennedy, Excell, and Griffin. Kennedy testified that the supervisors discussed Jacobs during this meeting. Tucker then called Jacobs into the meeting, and summarily fired her in front of Kennedy, Excell, and Griffin. A reasonable jury could infer from these facts that before Jacobs walked in, any or all of Jacobs's supervisors would have discussed the accommodation request e-mail. The record taken in the light most favorable to Jacobs also demonstrates that Tucker read the e-mail before firing Jacobs. When Jacobs entered Tucker's office she saw an annotated copy of her request for accommodation sitting on Tucker's desk. Tucker admits to having annotated the e-mail but testified that she did so only after the meeting. Tucker cannot remember when she printed the e-mail but testified that it may have been during the meeting and that she first read the e—mail during the meeting. This account is inconsistent with the audio recording of the meeting, which a reasonable jury could find does not contain any pauses long enough to account for Tucker finding and printing the e-mail. A reasonable jury could credit Jacobs's testimony over Tucker's on this factual question. Finally, tucker's statements during the termination meeting indicate that she knew about Jacobs's accommodation request. At the beginning of the meeting, Jacobs said she wanted to discuss "just what the e-mail said." Tucker did not ask to what e-mail Jacobs was referring. Instead, Tucker told Jacobs that, at the time of her hiring, Jacobs "expressed [she] would be able to handle all of that [i.e., front counter work], that it wouldn't be problematic for you." Id. Tucker added, "I don't have any place that I can use your services." Id. If Tucker had called the meeting without knowledge of the accommodation request, it is unlikely that she would have addressed the possibility of reassigning Jacobs. Moreover, when Jacobs asked whether she was being fired "because of the contents of the e-mail," Tucker responded that "it doesn't have anything to do with the e-mail." Id. If Tucker was truly unaware of the contents of the e-mail, it is unlikely that she would have answered the question in this way. A reasonable jury could infer from Jacobs's, Tucker's, and Kennedy's testimony and from the recording of the conversation that Tucker knew about Jacobs's accommodation request at the time she decided to terminate Jacobs. Jacobs has shown that the employer had notice of [her] disability. The record contains ample evidence from which a reasonable jury could conclude that working at the front counter was not an essential function of the position of deputy clerk. The job description does not indicate that all deputy clerks were expected to work at the front counter. Fewer than 15% of the office's deputy clerks worked behind the front counter, and some

11.

deputy clerks never performed this task. Because most of the deputy clerks were trained to work behind the front counter, many employees were available to perform that function. Finally, the AOC has produced no evidence that mastery of the front desk was essential or that Jacobs's no longer working behind the front counter would negatively impact the office. Jacobs has shown that with reasonable accommodations [she] could perform the essential function of the position. It is undisputed that each of Jacobs's supervisors – supervisors Kennedy, Excell, and Griffin – refused to discuss Jacobs's accommodation request with her until Tucker returned to the office. Both Radewicz and Tucker testified that Jacobs's supervisors had authority to reassign employees to other tasks (and therefore to engage in the interactive process with Jacobs). The morning that Tucker returned to the office after a three – week absence, she called Jacobs to her office and fired her without first discussing her accommodation request. From these facts, a reasonable jury could easily conclude that the AOC acted in bad faith by failing to engage in the interactive process with Jacobs. Jacobs has shown that the employer refused to make such accommodations. Jacobs has established a prima facie case for failure to accommodate. In my case, the circumstances are the same. As I continued to work the pain radiated from the bottom of my left foot, thru my left leg, thru my left buttocks, and into my back affecting my ability to stand and walk. On October 17, 2022 the pain had gotten so bad, so sharp that I felt like I was crippled and I told the Walmart head of security AP Jack and my Operations Manager Dom that I was not going to be at work the next day I was going to the hospital emergency room to see what the pain was all about. The next day October 18, 2022 the emergency room Doctor diagnose me with sciatica pain affecting the back, hip, and outer side of the leg, caused by compression of a spinal nerve root in the lower back, often owing to degeneration of an intervertebral a physical impairment that substantially limited my ability to stand and walk major life activities and is therefore a disability defined by the ADA. See attached copy of email to Human Resources Mairelys of medical record and Doctor's note 10 18 2022. I have shown that I was an individual who had a disability withing the meaning of the statue. On October 17, 2022 the pain had gotten so bad, so sharp that I felt like I was crippled and I told the Walmart head of security AP Jack and my Operations Manager Dom that I was not going to be at work the next day I was going to the hospital emergency room to see what the pain was all about. The next day October 18, 2022 the emergency room Doctor diagnose me with sciatica pain affecting the back, hip, and outer side of the leg,

12.

caused by compression of a spinal nerve root in the lower back, often owing to degeneration of an intervertebral a physical impairment that substantially limited my ability to stand and walk major life activities. I immediately contacted my Operational Manager Dom and began the workman's compensation process. Doing this time Dom left the job my Field Supervisor Khalic, District Manager Jim Myers, Human Resources Mairelys, and Brosnan Risk Consultants workman's compensation insurance company Everest Premier became the ones I was dealing with insofar as what information, and medical records was needed for workman's compensation process and any accommodations Brosnan Risk Consultants can give me to be able to continue to work the job as a result of the sciatica disability. See attached copy email to Human Resources Mairelys of medical record, text, and Doctor's note 11 08 2022. Also, see attached copy email from Mairelys to Clinton Brinson. These attachments all prove that I had given documentation of a disability of sciatica that was severe enough to interfere with my ability to work and needed to be accommodated for at my job as a security officer with Brosnan Risk Consultants. I have shown that the employer had notice of my disability. I talked with Field Supervisor Khalic and Human Resources Mairelys that I could do the security job with the accommodation of moving me back to the Durham or Raleigh stores where there was a vehicle patrol of the stores' parking lots where I would be sitting down off my feet driving the vehicle to alternate with the inside store patrol standing and walking. See copy of text messages with Operations Manager Khalic November 6, 2022 and November 12, 2022. Also, see copy of email to Mairelys November 9, 2022. Both these texts with Operations Manager Khalic and email to Human Resources Mairelys are proof that I had talked to Operations Manager Khalic and Human Resources Mairelys about working at the Durham or Raleigh stores where there was a vehicle patrol of the stores' parking lots where I would be sitting down off my feet driving the vehicle to alternate with the inside store patrol standing and walking was a reasonable accommodation for me to be able to continue to work my job as a security officer. I have shown that with reasonable accommodation I could perform the essential functions of the position. Finally, Operations Manager Khalic refused to make such accommodation for me to work at the Durham or Raleigh stores where there was a vehicle patrol of the stores' parking lots where I would be sitting down off my feet driving the vehicle to alternate with the inside store patrol standing and walking. There was a position open at the Raleigh/Garner store on 4500 Fayetteville Road with a vehicle patrol of the store's parking lot where I would be

13.

sitting down off my feet driving the vehicle to alternate with the inside store patrol standing and walking. The Brosnan Sitelead security officer at this store had left and hours was open for me to work there but Operations Manager Khalic refuse to let me work there. See attached copy of text messages with Operations Manager Khalic November 6, 2022 and November 12, 2022 as proof that Brosnan Risk Consultants had a vehicle patrol of the store's parking lot where I would be sitting down off my feet driving the vehicle to alternate with the inside store patrol standing and walking and refused to give me this accommodation so I could continue to work my job as a security officer. Moreover, another Brosnan Officer Egypt Colon had told me that they needed officers Raleigh/Garner store on 4500 Fayetteville Road that the Sitelead Kim was doing interviews. See attached texts messages October 19, 2022 with Brosnan Officer Egypt Colon and I. Brosnan Risk Consultants refusal to make such accommodation kept me out of work from October 18, 2022 until around November 13, 2022, a loss of about 3 and a half weeks of pay. See attached copy of texts messages with Operations Manager Khalic and I November 12, 2022 I have shown that the employer refused such accommodation. The simple truth is Brosnan Risk Consultants is guilty of failure to provide a reasonable accommodation violating my rights under the Americans with Disabilities Act.

Relief seek. For violation of my rights under Title VII of the Civil Rights Act of 1964 anti-retaliation provision Judges and courts have long, long ruled that big businesses such as Brosnan Risk Consultants cannot violate an employee's rights under this provision. Burlington Northern & Santa Fe Railway Co. v White 548 U.S. 53, 2006 White filed suit in federal court, where a jury awarded her damages of $43,000 after finding that she had been retaliated against for her complaints in violation of Title VII of the Civil Rights Act of 1964. The Supreme Court unanimously agreed that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay. Though the duties were within the same classification and the pay was eventually reinstated, the action was nevertheless sufficiently harsh to constitute retaliatory discrimination. EEOC v. A.C. Widenhouse, Inc. No. 13-1389 (4th Cir. 2014) A Winston-Salem jury of eight returned a unanimous verdict finding that Gill and Floyd Jr., had been harassed because of their race, and that Gill had been fired because of his race and in retaliation for complaining about racial harassment. The district court ruled that the EEOC should recover $50,000 in compensatory and punitive damages and

14.

back pay, and pre-judged interest. The court further enjoined A.C. Widenhouse from discriminating against any person on the basis of race or in retaliation for opposing practices unlawful under Title VII of the Civil rights Act of 1964. EEOC V USAble Life U.S. District Court for the Eastern District of Arkansas Western Division, Civil Action No. 4:19-cv-00846 USAble Life to pay $90,000 to settle EEOC Retaliation Discrimination suit, the employee complained about pregnancy and disability discrimination to both Blue Cross Blue Shield and USAble Life. USAble Life terminated the employee on April 11, 2018, because of how the employee who engage in protected activity, such as complaints about discrimination, from retaliation. Hubbell v FedEx Smart Post, Inc. 18-1727 (6th Cir, 2019) Sheryl Hubbell worked for FedEx Smart Post, Inc (FedEx) for about eight years until FedEx fired her in 2014. While employed Hubbell filed at least two EEOC charges alleging gender discrimination and retaliation for complaining about it. Hubbell later sued FedEX in court for terminating her employment in retaliation for filing those EEOC charges. Hubbell won her trial in district court, and a jury awarded $85,600 in front and back pay damages, $30,000 in non-economical damages, and $300,000 in punitive damages. Eschert v City of Charlotte October 25, 2017 the City of Charlotte agreed to pay Crystal Eschert and her attorney $1,135,100.27 for retaliation against her because she spoke out about safety concerns at a building on North Graham Street. Still, in the face of all these different court decisions even a Supreme Court decision big companies such as Brosnan Risk Consultants is still willing to violate a person's rights under Title VII of the Civil Rights Act of 1964, the amount of money these big companies have to pay for this violation is simply not enough. Here, with Brosnan Risk Consultants this fact is proven to be true. Brosnan Risk Consultants makes an annual revenue of around and about $854 million todays penalties of $300,000 for a big company such as Brosnan Risk Consultants is simply not enough. Not only did Brosnan Risk Consultants violate my rights under Title VII retaliation provision but the retaliation was intentional with malice or reckless indifference to my federally protected rights. Doesn't seem like Brosnan Risk Consultants is worried about the amount of money these big companies such as Brosnan Risk Consultants have to pay for violating an employee's rights under Title VII's anti-retaliation provision. The only way for Judges and the courts to demand compliance from these big companies such as Brosnan Risk Consultants is to make the penalties for violating an employee's rights under Title VII's anti-retaliation provision even higher. Relief seek $75,000 in attorney fees and cost of litigating this claim five point six five million in

15.

punitive damages. For violating my rights under the Americans with Disabilities Act the violation was also intentional with malice or reckless indifference to my federally protected rights. Relief seek $75,000 in attorney fees and cost of litigating this claim five point six five million in punitive damages.

Clinton Brinson

*Clinton Brunson*

10 4 2023