CLINTON BRINSON, )
)
        Plaintiff, )
)
v. )    **ORDER**
)
BROSNAN RISK CONSULTANTS, )
)
        Defendant. )
)

On October 4, 2023, Clinton Brinson ("Brinson" or "plaintiff"), proceeding pro se and in forma pauperis, filed a complaint against Brosnan Risk Consultants ("Brosnan" or "defendant") [D.E. 1, 2, 5]. On November 8, 2023, Brosnan moved to consolidate cases [D.E. 11] and filed a memorandum in support [D.E. 12]. The same day, Brosnan answered the complaint [D.E. 13]. On December 21, 2023, this court consolidated Brinson and Brosnan's two pending cases [D.E. 19]. On February 8, 2024, Brinson moved for leave to amend his complaint [D.E. 22]. On March 19, 2024, the court granted Brinson leave to amend his complaint [D.E. 24].

On April 1, 2024, Brinson amended his complaint [D.E. 25]. Brinson alleges: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), (2) failure-to-accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., ("ADA"), (3) discrimination in violation of the North Carolina Persons with Disabilities Protection Act, N.C. Gen. Stat. §§ 168A-1, et seq., ("NCPDPA"), (4) retaliation in violation of the ADA, (5) wrongful termination in violation of the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. §§ 95-240, et seq., ("REDA"), and (6) hostile work environment in violation

of Title VII. See [D.E. 24] 1–3. On April 29, 2024, Brosnan moved to dismiss the state-law claims in Brinson's amended complaint for lack of subject-matter jurisdiction and failure to state a claim [D.E. 29] and filed a memorandum in support [D.E. 30]. See Fed. R. Civ. P. 12(b)(1), (6). On April 30, 2024, the court notified Brinson of the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 32]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On May 21, 2024, Brinson responded in opposition to the motion to dismiss [D.E. 33]. On June 4, 2024, Brosnan replied [D.E. 34]. As explained below, the court grants Brosnan's partial motion to dismiss Brinson's amended complaint and dismisses Brinson's state law claims.

I.

On April 11, 2022, Brinson began working for Brosnan as a flex security officer at Walmarts in Durham, Raleigh, Charlotte, Greensboro, and Wilson, North Carolina. See Am. Compl. [D.E. 25] 3; [D.E 25-6] 4. Brinson has a "sciatica disability" and "severe spinal stenosis disability." Am. Compl. 1; see [D.E. 25-2] 2. In May or June 2022, Brinson frequently argued with Imani Taborn ("Taborn") concerning "how the security was going to be run" and reported Taborn to their supervisors, District Manager Jim Myers ("Myers"), Field Supervisor Khalic ("Khalic"), and Field Supervisor Chaz White ("White"). Am. Compl. 3; see id. at 1, 3–5. Thereafter, Brosnan caught Brinson spending several hours on the phone not patrolling. See [D.E. 25-6] 5. Brosnan warned Brinson about this behavior. See id.

In May 2022, Brosnan's Operations Manager Dominique Woods ("Woods") received an oral request from a Walmart store manager to reassign Brinson after he broke the glass in a break-away door chasing a shoplifter. See [D.E. 25-6] 5. After Brinson complained to Myers, Khalic, and White concerning his grievances with Taborn, Brosnan or Walmart transferred Brinson to a

2

different Walmart in Raleigh, reduced his hours, and increased his responsibilities that involved walking. See Am. Compl. 6. Brinson complained about the transfer and hours change. See id. According to Brinson, White came to the Walmart store in Raleigh and threatened and made false accusations against Brinson for complaining. See id. at 6–7. In response, Brosnan told Brinson he was a flex officer and could be placed at any Walmart. See id. at 7–8. Following these instances, Brosnan or Walmart transferred Brinson to a Wilson Walmart, where he was demoted in position, received lower pay, and held responsibilities with significant walking. See id. at 11. Brinson asked to be transferred to a store with a truck based on his doctor's recommendation due to increased foot and back pain. See id. at 12; [D.E. 25-3] 1–11. In response, Brosnan told Brinson his requested stores did not need a flex security officer. See [D.E. 25-3] 7–11. Later, Brinson told Brosnan or Walmart that he "absolutely could not work at the Wilson Walmart location because of [his] sciatica disability." Am. Compl. 17. According to Brinson, from October 18, 2022, to November 13, 2022, Brosnan did not make any reasonable accommodations. See id. at 27. Thus, Brinson could not work and did not receive pay. See id.

On November 9, 2022, Brinson informed Brosnan's human resources he was suffering with disability pain. See [D.E. 25-6] 6. From November 8, 2022, to November 11, 2022, Brinson was not cleared to return to work after going to the emergency room, but he could return with no restrictions on November 11, 2022. See [D.E. 25-2] 4; cf. [D.E. 25-6] 6. On November 29, 2022, Brinson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). See [D.E. 25-6] 6.

In February 2023, Brinson reprimanded his coworker, Aaron, at a Garner Walmart because Aaron turned down his radio and was not responding to calls. See Am. Compl. 31. Brinson told Aaron that they needed to switch patrols because he did not want to have to respond to Aaron's

3

calls for him. See id. Aaron reported Brinson to his supervisor, "got into [Brinson's] face," threatened him, and "called [Brinson] a snitch." Id.; see id. at 2. Because Brinson and Aaron could not work together, Khalic sent them both home. See id. at 32. Brinson's supervisor told Brinson that Brinson's hours would be reduced if he could not work with Aaron. See id. A few days later, Aaron "tr[ied] to goad [Brinson] into an argument" while "record[ing]" Brinson. Id. Khalic and Myers repeated that if Brinson and Aaron could not work together, Khalic and Myers would reduce both of their hours. See id. Twice more Aaron called Brinson a snitch. See id. at 2, 34.

On March 6, 2024, Brinson learned he had a doctor's appointment in Raleigh on March 7, 2024, concerning his sciatica. See id. at 38–39; [D.E. 25-2] 3. Brinson was scheduled to work on that date. See Am. Compl. 39. Brinson's shift supervisor, Sean, told him no one could cover for him, but Brinson could go to the doctor's appointment anyway. See id. The next day, Khalic told Brinson he could not attend his doctor's appointment and would be terminated if he left his shift. See id. Brinson attended the appointment. See id. Brinson says Brosnan terminated him. See Am. Compl. 1–2, 39–40. Brosnan says he voluntarily resigned. See [D.E. 25-6] 6. Brinson asked human resources to reverse his termination, but human resources declined. See Am. Compl. 41. On an unknown date, the EEOC issued a right-to-sue notice. See [D.E. 25-7] 1.

II.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S.

4

662, 678–79 (2009); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A.

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Fed. R. Civ. P. 12(b)(1). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). When considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff must establish that this court has subject-matter jurisdiction over his or her claims. See, e.g., Steel, 523 U.S. at 104; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject[-]matter jurisdiction, the . . . court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

Brinson alleges that Brosnan failed to reasonably accommodate him and retaliated against him in violation of the ADA and NCPDPA. See Am. Compl. 1–2. Under the NCPDPA, no "court shall have jurisdiction over an action filed under this Chapter where the plaintiff has commenced federal judicial or administrative proceedings under . . . the [ADA] . . . involving or arising out of

5

the facts and circumstances involved in the alleged discriminatory practice under this Chapter." N.C. Gen. Stat. § 168A-11(c). A court lacks subject-matter jurisdiction over a NCPDPA claim that involves the same facts and circumstances as an ADA claim. See Dillard v. Carefirst Bluechoice, Inc., No. 3:21-CV-500, 2022 WL 2124501, at *3 (W.D.N.C. June 13, 2022) (unpublished); Watkins v. Lincoln Cmty. Health Ctr., Inc., No. 1:12CV1250, 2013 WL 2285250, at *3 (M.D.N.C. May 23, 2013) (unpublished); Cone ex rel. Cone v. Randolph Cnty. Schs., 302 F. Supp. 2d 500, 514 (M.D.N.C. 2004), aff'd sub nom. Cone v. Randolph Cnty. Schs., 103 F. App'x 731 (4th Cir. 2004) (per curiam) (unpublished); Bowling v. Margaret R. Pardee Mem'l Hosp., 179 N.C. App. 815, 820–21, 635 S.E.2d 624, 629 (2006).

Brinson admits that his NCPDPA claim relies on the same facts as his ADA claim. See Am. Compl. 28; [D.E. 33] 4; cf. [D.E. 30] 5–6. Accordingly, the court lacks subject-matter jurisdiction over Brinson's NCPDPA claim against Brosnan and dismisses Brinson's NCPDPA claim.

B.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of

6

Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

7

In evaluating Brinson's REDA claim, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (cleaned up). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.8 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (cleaned up); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

Brinson alleges that Brosnan retaliated against him in violation of REDA. See Am. Compl. 2–3. REDA prohibits retaliation against an employee when the employee "in good faith does or threatens to file a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action." Carr v. United States, No. 4:17-CV-167, 2018 WL 5074671, at *6 (E.D.N.C. Oct. 17, 2018) (unpublished) (cleaned up); see N.C. Gen. Stat. § 95-241; Vines v. Mountaire Farms, Inc., No. 23-1365, 2024 WL 1254174, at *4 (4th Cir. Mar. 25, 2024) (per curiam) (unpublished); Hadley v. Duke Energy Progress, LLC, 677 F. App'x 859, 862 (4th Cir. 2017) (per curiam) (unpublished). REDA requires the aggrieved employee to file a written complaint with the North

8

Carolina Commissioner of Labor within 180 days of the alleged violation before commencing a civil action. See N.C. Gen. Stat. § 95-242(a). The Commissioner of Labor will then investigate the claim and either file a civil action on behalf of the employee or issue a right-to-sue letter. See id. §§ 95-242(b), 95-243(a). The aggrieved employee must receive a right-to-sue letter from the Commissioner of Labor before filing a civil action under REDA. See id. § 95-243(e); see, e.g., Reaves v. Faulkner, No. 7:22-CV-40, 2022 WL 19236195, at *7 (E.D.N.C. Oct. 12, 2022) (unpublished), report and recommendation adopted, 2023 WL 2614573 (E.D.N.C. Mar. 23, 2023) (unpublished); Carr, 2018 WL 5074671, at *6–7; Satterwhite v. Wal-Mart Stores E., L.P., No. 5:11-CV-363, 2012 WL 255347, at *3 (E.D.N.C. Jan. 26, 2012) (unpublished).

Brinson fails to plausibly allege that he filed a complaint with the North Carolina Commissioner of Labor or received a right-to-sue letter from the Commissioner of Labor. Cf. [D.E. 30] 7. Thus, Brinson fails to plausibly allege that he exhausted his administrative remedies before filing a REDA claim. See, e.g., Egler v. Am. Airlines, Inc., No. 5:17-CV-73, 2018 WL 1021331, at *3 (E.D.N.C. Feb. 22, 2018) (unpublished); Brackett v. SGL Carbon Corp., 158 N.C. App. 252, 257, 580 S.E.2d 757, 760–61 (2003).

In opposition to this conclusion, Brinson argues that he filed an EEOC charge and need not also administratively exhaust his REDA claim with the North Carolina Commissioner of Labor. See [D.E. 33] 2–5. Not true. See, e.g., Reaves, 2022 WL 19236195, at *7; Carr, 2018 WL 5074671, at *6; Egler, 2018 WL 1021331, at *3; Satterwhite, 2012 WL 255347, at *3. Accordingly, the court dismisses Brinson's REDA claim.

III.

In sum, the court GRANTS defendant's partial motion to dismiss [D.E. 29] and DISMISSES WITHOUT PREJUDICE plaintiff's NCPDPA and REDA claims.

SO ORDERED. This 6 day of August, 2024.

                                                                       **JAMES C. DEVER III**
                                                                       United States District Judge